Opinion issued July 29, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00767-CR

———————————

HYON SUP SHIN, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 180th District Court

Harris County, Texas



Trial Court Case No. 1157994

 



 

MEMORANDUM OPINION

          Appellant
Hyon Sup Shin was convicted by a jury of robbery.  See Tex.
Penal Code Ann. § 29.02(a) (1) (Vernon 2003).  The jury found that Shin did not use or
exhibit a deadly weapon during the commission of the robbery.  The jury assessed punishment at imprisonment
for seven years and four months.  In three
points of error, Shin contends that the evidence is legally and factually insufficient
to support his conviction and that his trial counsel was ineffective.  We affirm.

Background

 

          The complainant, Marco Uroiste, met Shin
while playing an online computer game.  Over a period of time, the two discussed
meeting so Uroiste could buy computer hardware from Shin for himself and his
friends.  Uroiste agreed to drive from
College Station to Houston to meet Shin at a shopping mall.  He brought approximately $1,500 in cash to
purchase the hardware and placed the money in a small steel safe.

          Uroiste
testified at trial that he and Shin met at the mall.  Shin asked Uroiste to follow him to a
friend’s apartment, and Uroiste agreed, assuming they were going to get the
hardware.  In the parking lot, Uroiste
met Carlos Barrientos, an acquaintance of Shin. 
Two other men approached them in a corridor of the apartment complex,
and Uroiste testified that these two men walked by him closely and stared.  Shin then said that he needed to go back to
his car to get his apartment key, and Uroiste said he would get the money.

As Uroiste
opened his car’s trunk to retrieve the safe, the two men who had previously
approached him returned and asked for marijuana.  When Uroiste began to walk away, one of the
men tried to punch him.  Barrientos then
grabbed Uroiste and hit him, and Shin and the other two men hit him as well.  Uroiste also testified that Shin had a
butcher knife and that Shin sprayed him with mace.

Uroiste
escaped and ran away.  As one of the men
chased him, Uroiste turned around and hit him with the safe, which caused it to
open.  The men then grabbed the money.  Three of them left the scene in Barrientos’s
car, and the fourth ran away on foot.

Uroiste got
in his car and attempted to follow Barrientos’s car.  He later noticed that his left arm was soaked
in blood, and he passed out.  When he
regained consciousness, he drove back to the apartment complex.  There he was approached by some people who
encouraged him to stay and wait for the police. 
Uroiste got back in his car and again attempted to find the three men
who had fled in Barrientos’s car.  He
began to feel sick, so he pulled into a parking lot and called his
girlfriend.  Because the parking lot was
deserted and he was concerned he might pass out due to loss of blood, Uroiste
drove his car to the nearest apartment complex so he could ask for help.  A woman notified the authorities, and an
ambulance took him to the hospital.  The
hospital records introduced at trial showed that Uroiste had a knife wound to
his upper back.

Sylvia Perez
testified at trial that she and her husband lived at the apartments where the
incident occurred.  Looking out her window,
she saw five men hitting Uroiste.  She
did not see anyone with mace or a weapon. 
She also did not see Uroiste’s safe. 
After the fight, Uroiste returned to the apartments.  Perez did not observe that he had any injuries.

Perez’s
daughter also saw the incident and testified at trial.  She saw one of the men hit Uroiste with a
bottle.  She saw money fall from
Uroiste’s hand or pocket, and she watched the other men pick it up.

Shin
testified at trial during the guilt-innocence phase.  He said that he knew Uroiste from online
gaming and that Uroiste had called him to say he wanted to meet in person and
smoke marijuana.  Shin said that Uroiste
asked him for help in buying marijuana. 
Shin eventually agreed to help and drove to the shopping mall with
Barrientos to meet Uroiste.  He testified
that he showed Uroiste a sample of marijuana and that they agreed to go to the
apartment complex to complete the sale. 
When they got to the apartment complex, two men approached them and
asked to buy marijuana.  The men saw
Uroiste with his safe and attacked him.

Shin
testified that he joined in the fight to help Uroiste.  Barrientos entered the fight and used pepper
spray, which hit Uroiste.  Shin said that
no one in the fight had a knife or meat cleaver.  When Uroiste ran away, the two men began
chasing him, and Shin and Barrientos got into a car and left.  They did not pick up Uroiste’s money, which
had fallen out of the safe.




 

Analysis

Legal sufficiency to show bodily
injury

          In
his second point of error, Shin claims that the evidence is legally
insufficient to support his conviction for robbery because there is no evidence
that he caused bodily injury to Urioste by kicking him with his foot or
striking him with his hand.  See Tex. Penal Code Ann. § 29.02(a)(1)
(Vernon 2003).  The argument that the
bodily injury had to have been caused by Urioste kicking him with his foot or
striking him with his hand flows from the jury’s determination that Shin did
not use or exhibit a knife during the commission of the offense.

The Penal
Code defines “bodily injury” to mean “physical pain, illness, or any other
impairment of physical condition.”  See Tex.
Penal Code Ann. § 1.07(a)(8) (Vernon Supp. 2009).  Shin argues that Urioste used the word “pain”
only six times in his testimony and that each time it was in reference to cuts
or lacerations.  He claims that the cuts
and lacerations occurred when Urioste allegedly fell or rolled over broken
glass.  Shin thus contends that all of
Urioste’s specific references to pain had nothing to do with Shin kicking
Urioste with his foot or striking Urioste with his hand.

          Even if we were to accept Shin’s contention, the
record also includes Urioste’s testimony that Shin and the other three men
struck him “probably over a hundred times” and that he was struck with a
bottle.  The jury could make a reasonable
inference that being struck “probably over a hundred times,” including being
struck with a bottle, would cause Urioste’s lacerations and pain.  See
Goodin v. State, 750 S.W.2d 857,
859 (Tex. App.—Corpus Christi 1988, pet. ref’d) (“People of common intelligence
understand both physical pain and some of the natural causes of pain.”).

          The
standard of review for legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the verdict, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  We hold there is legally
sufficient evidence that Shin caused bodily injury to Urioste by kicking him
with his foot or striking him with his hand.

We overrule
the second point of error. 

Factual sufficiency of the evidence

          In
his first point of error, Shin claims the evidence is factually insufficient to
support his conviction for robbery.  He
identifies various propositions for which he contends the State failed to
present any evidence.  He contends there
was no evidence to show that he made a conscious decision to commit, or planned
to commit, the charged offense of robbery. 
He claims there was no evidence to show that he planned or acted in
concert with the two men who approached him and Uroiste while they were at
their cars in the apartment complex.  He
contends there was no evidence that he knew in advance that the two men
encountered in the parking lot would assault Uroiste or that he planned the assault
in concert with the others.  He argues
that there was no evidence that he knew in advance that Uroiste would be
bringing a large sum of money with him in a safe.  Finally, he contends there was no evidence to
show that he knew Uroiste was carrying cash in a safe and that it would be necessary
for them to return to the cars to retrieve the safe from Uroiste’s trunk in
order to complete the transaction.  Shin
claims the State did not meet its burden of proof to establish any of these
matters.

In his brief,
Shin does not directly attack the factual sufficiency of the elements of
robbery.  Instead, he argues that the
evidence at trial was more consistent with his version of events—that the altercation resulted from a
drug deal gone bad, in which he, Barrientos, and Urioste were all attacked by
the other two men at the apartment complex. 
We review this argument using the ordinary standards for
factual-sufficiency review.  Thus we view
all of the evidence in a neutral light.  Cain
v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).  We will set aside the jury’s verdict only if
the evidence supporting the conviction is so weak that the jury’s verdict is
clearly wrong and manifestly unjust, or if the jury’s verdict is otherwise against
the great weight and preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).

Under the
first prong of Johnson, we cannot conclude that a conviction is “clearly
wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury.  Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006).  Under the second
prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of
that conflict.  Id.  Before finding that the evidence is factually
insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Id.  In conducting a factual-sufficiency review, we
must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict.  See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

We may not
substitute our judgment for that of the fact-finder.  King v. State, 29 S.W.3d
556, 563 (Tex. Crim. App. 2000).  The
fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact‑finder’s
evaluation of credibility and demeanor.  Cain,
958 S.W.2d at 408B09.  As the determiner
of the credibility of the witnesses, the fact-finder may choose to believe all,
some, or none of the testimony presented. 
Id.
at 407 n.5.  The standard for reviewing
the factual sufficiency of the evidence is whether, after considering all of
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond reasonable doubt.  Watson,
204 S.W.3d at 415.

Under the
jury charge, to which Shin did not object, the jury could have found Shin
guilty of robbery if it found that while in the course of committing theft of
property, and with the intent to obtain or maintain control of the property, Shin
intentionally, knowingly, or recklessly caused bodily injury to Urioste by
kicking him with his foot, striking him with his hand, or stabbing him with a
knife.  See Tex. Penal Code Ann. § 29.02(a)(1)
(Vernon 2003).  Consequently, none of the
various matters identified by Shin as lacking evidentiary support was an element
of the offense that the State had the burden to prove.  In particular, it was not necessary for the
jury to find that Shin planned the robbery in advance or in concert with
others, as suggested by Shin’s arguments.

Shin’s
substantive argument is that the evidence shows that Urioste came to Houston to
buy marijuana, rather than to purchase computer hardware.  Under Shin’s view of the evidence, he, Barrientos,
and Urioste were all attacked by the other two men at the apartment complex.  Shin also points to the fact that Urioste did
not call the police, but instead drove while he was injured, as establishing
that this was a drug deal, rather than an attempt to purchase computer
hardware.  Shin argues that the evidence
of this version of what happened is so strong that the jury was not rationally
justified in finding him guilty.  He thus
concludes that “viewing all the evidence in a neutral light, the jury was not
rationally justified in finding guilt beyond a reasonable doubt; the evidence
supporting the verdict is too weak to support the finding of guilt beyond a
reasonable doubt and, the contrary evidence is strong enough that the beyond‑a‑reasonable‑doubt
standard was not met.”

We
disagree.  There is evidence in the
record that Shin, while in the course of committing theft of property owned by
Urioste, and with the intent to obtain or maintain control of the property,
intentionally, knowingly, or recklessly caused bodily injury to Urioste by
kicking him with his foot or striking him with his hand.  Urioste testified that Shin hit him, kicked
him, and sprayed him with mace.  Urioste
also testified that Shin was part of the group of men that picked up the money
that fell out of Urioste’s safe.  There
was evidence adduced at trial from Sylvia Perez that she did not see anyone
with mace or a weapon, and she did not see Urioste’s safe or any of his
injuries.  Also, Shin testified that he
joined the fight to help Urioste and nobody had a knife.  Nevertheless, the jury rejected Shin’s view
of the evidence, and Shin does not substantively argue that the evidence of one
or more elements of the offense of robbery is factually insufficient.  See
Cain, 958 S.W.2d at 407 & n.5, 408–09.

Even if the
jury disbelieved the evidence that Urioste met Shin to buy computer hardware,
and even if the jury believed that Urioste met Shin to buy drugs, those matters
are not inconsistent with the jury’s determination that Shin is guilty of robbery.  The evidence supporting the conviction is not
so weak as to render the jury’s verdict clearly wrong and unjust.  See
Johnson v. State, 23 S.W.3d at 11.

We overrule the
first point of error. 

Ineffective
assistance of counsel

          In
his third point of error, Shin claims his trial counsel was ineffective for the
following reasons: (1) failing to file a motion in limine; (2) failing to file
a motion to adopt the objections made by Barrientos’s counsel; (3) failing to
present evidence in support of his motion for community supervision; (4) failing
to subpoena or call character witnesses at the punishment phase of trial; and
(5) failing to call Shin to testify at punishment.

To be
entitled to a new trial based on ineffective assistance, a defendant must show
that his counsel’s performance was so deficient that he was not functioning as
acceptable counsel under the Sixth Amendment, and there is a reasonable
probability that, but for counsel’s error, the result of the proceedings would
have been different.  See Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Hernandez
v. State, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986).  The defendant bears the burden to prove
ineffective assistance of counsel.  See
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

          Allegations
of ineffective assistance of counsel must be firmly founded in the record.  McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996).  The review
of trial counsel’s representation is highly deferential and presumes that
counsel’s actions fell within a wide range of reasonable professional
assistance.  See Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing Strickland,
466 U.S. at 689, 104 S. Ct. at 2065). 
When the record is silent on the motivations underlying trial counsel’s
tactical decisions, the appellant usually cannot overcome the strong
presumption that trial counsel’s conduct was reasonable.  See Thompson, 9 S.W.3d at 813.

In most
cases, the record on direct appeal is undeveloped and cannot adequately reflect
the motives behind trial counsel’s actions. 
See Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App.
2001).  Because the reasonableness of
trial counsel’s choices often involves facts that do not appear in the
appellate record, the Court of Criminal Appeals has stated that trial counsel
should ordinarily be given an opportunity to explain his actions before a court
reviews that record and concludes trial counsel was ineffective.  See Bone v. State, 77 S.W.3d
828, 836 (Tex. Crim. App. 2002).  A
petition for writ of habeas corpus usually is the appropriate vehicle to
investigate ineffective-assistance claims. 
See Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim.
App. 2002).  Without proof from the
defendant that there is no plausible professional reason for his trial
counsel’s act or omission, the reviewing court may not speculate on why his counsel
acted as he did.  See Bone,
77 S.W.3d at 835–36.

There was no
motion for new trial filed in this case. 
Furthermore, Shin has not provided any authority that specifically
addresses how this Court can conclude that the types of alleged “failures” by
Shin’s trial counsel constitute ineffective assistance of counsel.  In particular, (1) failing to file a motion
in limine did not preclude Shin’s counsel from making specific objections at
trial as may have been appropriate, (2) Shin does not address any specific
objection made by Barrientos’s counsel or how making that objection would have
affected his case, and (3) there is no appellate record of what evidence Shin’s
counsel could have, but failed to, present in support of the motion for
community supervision or during the punishment phase of the trial.  Accordingly, we decline to speculate on why
counsel acted as he did.  See id.

We overrule
point of error three.

Conclusion

          We
affirm the trial court’s judgment.

 

 

 

 

                                                          Michael
Massengale

Justice

 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do not publish. 
Tex. R. App. P. 47.2(b).